IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

vs.  3:00cr48/LAC
 3:05cv256/LAC/MD

**MELODY ROSE**

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 1298).  The government has filed a response (doc. 1350) and the defendant has not filed a reply, despite having been afforded the opportunity to do so.  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**I. BACKGROUND**

Defendant was charged in 3 counts of a third superseding indictment with conspiracy to commit wire fraud or securities fraud, conspiracy to engage in or attempt to engage in a monetary transaction of criminally derived property of a value greater than $10,000, and knowingly engaging in or attempting to engage in a monetary transaction involving criminally derived properties on a date certain. (Doc.

388, counts 1, 2 & 11). The alleged fraud took place as part of a complex "Ponzi" scheme[1] wherein wealthy individuals were induced to invest large sums of money in exchange for unusually high rates of return. Defendant was represented by retained counsel Ronald W. Johnson.

Following a six week jury trial involving eight of the ten charged defendants, defendant Rose was convicted as charged. (Doc. 492). She filed unsuccessful motions for judgment of acquittal, motion for a new trial, and for release pending sentencing (doc. 506, 507 & 499). Attorney Jay Strongwater was granted permission to appear pro hac vice, and he appeared along with Ronald Johnson at sentencing.[2] (Doc. 629, 630, & 631; doc. 884). Defendant was sentenced to a term of 97 months imprisonment to be followed by three years of supervised release and restitution in the amount of $17,415,99.12, jointly and severally with the co-defendants.

Defendant appealed, raising three grounds for relief. She contended that trial counsel labored under an actual conflict of interest in representing her, that the trial court erred in determining the amount of loss attributable to her, and that her convictions should be reversed because the government presented multiple conspiracies. The Eleventh Circuit Court of Appeals found that the first issue was not adequately developed and that she was not entitled to relief on the other two grounds. Her convictions were affirmed on February 27, 2004. (Doc. 1184).

---

[1] Ponzi schemes are a type of illegal pyramid scheme named for Charles Ponzi, who duped thousands of New England residents into investing in a postage stamp speculation scheme back in the 1920s. Ponzi thought he could take advantage of differences between U.S. and foreign currencies used to buy and sell international mail coupons. Ponzi told investors that he could provide a 40% return in just 90 days compared with 5% for bank savings accounts. Ponzi was deluged with funds from investors, taking in $1 million during one three-hour period. Though a few early investors were paid off to make the scheme look legitimate, an investigation found that Ponzi had only purchased about $30 worth of the international mail coupons. Decades later, the Ponzi scheme continues to work on the "rob-Peter-to-pay-Paul" principle, as money from new investors is used to pay off earlier investors until the whole scheme collapses. http://www.sec.gov/answers/ponzi.htm

[2] Mr. Strongwater is the attorney who filed the instant § 2255 motion.

*Case No: 3:00cr48/LAC; 3:05cv256/LAC/MD*

In the present motion, defendant claims that counsel Ron Johnson was constitutionally ineffective in several respects and that he labored under an actual conflict of interest.

## II. LEGAL ANALYSIS

### A. Ineffective assistance of counsel

#### 1. General Legal Standards

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")).

**Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.** *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003). (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the

*Strickland* test. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

Defendant's ineffective assistance of counsel claims will be considered against the backdrop of these legal standards.

1. <u>Trial Preparedness</u>

Defendant contends that counsel was unprepared for trial, cross-examination of witnesses, and presentation of a defense. She claims, without record citation, that the court "reprimanded counsel for his lack of preparation and focus." She also maintains that counsel told her that had he been paid his fees, he would have been prepared. Defendant's blanket allegation of counsel's unpreparedness is utterly conclusory. She has not provided any specific indication of what counsel could or should have done that would have altered the outcome of the case. Absent any such specifics, the court cannot conclude that she has shown either deficient performance or prejudice.

Furthermore, her allegation appears to be without foundation. Ronald Johnson indicates in his affidavit that he is a Board Certified Criminal Trial Lawyer with 32 years of experience as a criminal defense attorney. (Doc. 1350, exh. 2 at ¶2). He states that he prepared the defendant's case for trial to the best of his ability,

reviewing all documents he felt necessary to prepare for trial, and interviewing witnesses. The invoices attached to counsel's affidavit indicate that he spent over 500 hours on defendant's case before trial even began. Another exhibit to the affidavit purports to show boxes containing "most of the exhibits that were generated to defend the defendant's case." (Doc. 1350, exh. 2 at ¶ 9 and exh. 3).

2. <u>Failure to advise defendant of right to testify</u>

Defendant next claims that counsel failed to advise her of her right to testify in her own behalf. It is axiomatic that a criminal defendant has the right to testify in his or her own defense. *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37 (1987); *McGriff v. Dept. of Corrections,* 338 F.3d 1231, 1237 (11th Cir. 2003); *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999); *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992). This right is fundamental and personal to the defendant, such that it may not be effectively waived by counsel against the defendant's will. *Gallego,* 174 F.3d at 1197; *Teague*, 953 F.2d at 1532; *Sexton v. French,* 163 F.3d 874, 885 (4th Cir. 1998); cf. *United States v. Brown,* 217 F.3d 247, 258-59 (5th Cir. 2000) (finding that a strong-willed defendant who changed his mind about testifying likely did so as a result of persuasion rather than coercion); *Emery v. Johnson*, 139 F.3d 191, 199 (5th Cir.1997) (same). When "[u]naccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right ... but simply discharges defense counsel's ethical responsibility to the accused." *Lema v. United States,* 987 F.2d 48, 52 (1st Cir. 1993).

The appropriate vehicle for a claim that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under *Strickland,* as the defendant brings in this case. *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999); *Teague,* 953 F.2d at 1534; *United States v. Brown*, 217 F.3d 247, 258-59 (5th Cir. 2000). Although under the Strickland ineffective-assistance standard "'the decision whether to put a Defendant on the stand is a 'judgment call'

which should not easily be condemned with the benefit of hindsight,' ... it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice." *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002) (citation omitted). Counsel's performance is deemed deficient if "counsel refused to accept the defendant's decision to testify and would not call him to the stand . . . . Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant," defense counsel's performance would be deemed deficient. *United States v. Camacho,* 40 F.3d 349, 355 (11th Cir. 1994) (quoting *Teague*, 953 F.2d at 1534). A finding that counsel's performance was not deficient ends the inquiry. *Gallego, Camacho, Teague, supra.* However, because the *Strickland* standard applies, even if counsel's performance was deficient, a defendant will not be entitled to relief if no prejudice inured. *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001); *Brown v. Artuz*, 124 F.3d 73, 80-81 (2nd Cir. 1997) (defendant had not established prejudice since the testimony he would have given would not have established a defense to the charges under state law); *Soto-Alvarez v. United States,* 62 F.3d 1411, 1995 WL 434799 (1st Cir. 1995) (no prejudice since defendant's testimony would not have brought any new information to the jury's attention); *Nilsen v. Borg*, 41 F.3d 1513, 1994 WL 651941 (9th Cir. 1994) (no prejudice since jury would likely have found defendant's testimony implausible).

"Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic." *United States v. Martinez*, 181 F.3d 627, *628 (5th Cir. 1999). Such claims may be the subject of summary dismissal and do not always require a hearing. *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991)(stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed"); *Walker v. United States*, 238 F.3d 426, 2000 WL 1871681 (6th Cir. 1999) (no hearing required);*United*

*States v. Adams*, 198 F.3d 238, 1999 WL 812352, **1 (4th Cir.) (claim was properly dismissed without a hearing).

Defendant maintains that neither her attorney nor the court advised her that she had the right to testify and that the decision whether or not to testify rested with her, and not with counsel. She now maintains that had she been aware that it was her personal right to testify, she would have done so. Defendant does not set forth the nature of the testimony she claims she would have given, or how it would have affected the outcome of her case, as required by the case law set forth above. She merely makes a conclusory claim that there is a reasonable probability that but for her trial counsel's unprofessional errors, the result of the proceeding would have been different.

Counsel presents a conflicting version of events in his affidavit. He states that he never advised the defendant not to testify, but told her that it was her personal decision. (Doc. 1350, exh. 2 at ¶ 7). He further states that he and his client both felt that Ms. Rose would have a difficult time withstanding the cross-examination of AUSA Heldmeyer if she chose to testify, and that ultimately his client decided not to testify. (*Id.*)

Defendant also claims that the court did not inform her that the decision to testify rested with her. An overwhelming majority of the circuits have held that a district court generally has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived the right voluntarily. See *United States v. Van de Walker*, 141 F.3d 1451 (11th Cir. 1998); *United States v. Leggett*, 162 F.3d 237, 246 (3rd Cir. 1998)(citing cases from nine courts of appeals); *United States v. Richardson*, 195 F.3d 192, 197-198 (4th Cir. 1999). Some courts have held that a waiver may be inferred from the defendant's conduct if she or he does not alert the trial court of a disagreement with counsel as to

whether he should testify.[3] *Gonzalez v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000); *United States v. Webber,* 208 F.3d 545, 552 (6th Cir. 2000); *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993); *United States v. Edwards*, 897 F.2d 445, 447 (9th Cir.), cert. denied, 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990); *United States v. Kamerud*, 326 F.3d 1008, 1017 (8th Cir. 2003) ("if an accused desires to exercise [his] constitutional right to testify the accused must act affirmatively and express to the court [his] desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred.") (citation omitted). While the court is not surprised to encounter factual misrepresentations in the submissions of pro se litigants, defendant is represented by counsel in this case. Therefore, the fact that this assertion is indisputably contradicted by the record is troubling. At the conclusion of the proceedings on April 3, 2001, the following colloquy took place:

> **THE COURT: All right. I want to address all of you and be sure that you understand your rights in this case with regard to testifying or not testifying. And I want to be sure that you understand that you have the right to remain silent, and that cannot be held against you. You have heard me advise the jury of that already and I will do so again in the closing instructions. And do each of you understand that you have that right to remain silent and not testify in your case?**
>
> **\* \* \* \* \* \***
>
> **DEFENDANT ROSE: Yes, sir.**
>
> **THE COURT: But it is important for you to also know that you have the right to testify in your case. And you can do that with your own choosing. Do each of you understand that?**
>
> **\* \* \* \* \* \***

---

[3]"[I]n exceptional, narrowly defined circumstances, judicial interjection through a direct colloquy with the defendant may be required to ensure that the defendant's right to testify is protected." *United States v. Pennycooke*, 65 F.3d 9, 12 (3rd Cir. 1995). The *Pennycooke* court's illustration of an "exceptional circumstance" was a defendant who repeatedly interrupted the trial to express his desire to testify and interjected that his attorney was lying when his attorney told the court that the attorney and the defendant had made a joint decision that the defendant would not testify. *Id.* at 12 (citing *Ortega v. O'Leary*, 843 F.2d 258 (7th Cir.1988)).

*Case No: 3:00cr48/LAC; 3:05cv256/LAC/MD*

**DEFENDANT ROSE:** Yes, sir.

**THE COURT:** But more importantly, do you understand that that is a decision for you to make and no one else, not your attorney, not your family, not your friends, not your co-defendants, anyone? That is your own personal decision to make. Do you understand that?

\* \* \* \* \* \*

**DEFENDANT ROSE:** Yes, sir.

**THE COURT:** All right. The way that I want to leave this is that your attorney will be speaking for you, of course. And if your attorney rests your case without calling you as a witness, then I'm assuming that you agree with that, unless I see your hand waving and get my attention. I'll know what you're talking about and we'll solve the problem right then and there.

On the other hand, if your attorney calls you as a witness and it is your personal decision that you do not want to testify, in like manner, just wave your hand and we'll take care of it. But if you take the witness stand and give testimony, then that's going to indicate for the record that that is your personal decision to take the witness stand and testify. Do you understand that?

\* \* \* \* \* \*

**DEFENDANT ROSE:** Yes, sir.

**THE COURT:** Any of you have any questions about that, how we'll work it or what the expectations are?

**(Doc. 872 at 292-295).** Ignoring for the moment that defendant failed to show prejudice because she failed to explain what her outcome-altering testimony would have been, and resolving the conflict between defendant's sworn motion and counsel's affidavit to the contrary in defendant's favor, her claim fails. The court clearly explained the defendant's rights to her, in direct contradiction to the assertion in her sworn motion, and thus she has not shown that she was denied a fundamental constitutional right.

*Case No: 3:00cr48/LAC; 3:05cv256/LAC/MD*

### 3. Ineffective assistance of counsel at Sentencing

Defendant claims that counsel was ineffective at sentencing when he did not properly prepare, investigate or present arguments to the district court regarding applicable federal sentencing guidelines and restitution issues. Counsel notes in his affidavit that he made numerous objections to the defendant's pre-sentence investigation report and submitted an extensive sentencing memorandum to the court. (Doc. 1350, exh. 2 at ¶ 8). These objections were discussed at a lengthy sentencing proceeding, after which defendant was sentenced to the bottom of the applicable guideline range. (Doc. 884). As noted above, in the case of alleged sentencing errors, defendant need only demonstrate that there would have been some difference in her sentence, not necessarily an enormous one, as "any amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). Again, however, defendant's claim fails because she has failed to state with specificity what arguments could have been made that would have altered the outcome of the proceedings, and her conclusory assertions do not entitle her to relief. *Tejada, supra.*

### B. Conflict of Interest

Defendant's last claim is that her attorney labored under an actual conflict of interest, because co-defendant David Johnson was represented at trial by counsel's law partner, Roy Kinsey. Defendant states in her motion that neither she nor her co-defendant executed any signed waiver concerning the dual representation. She also

maintains that although the court was alerted to the "necessity" for a *Garcia*[4] hearing under Fed.R.Cr.P. 44(c),[5] it did not hold such a hearing.

Defendant has not submitted an affidavit in support of the instant § 2255 motion, although in a previously filed affidavit she stated that she was advised that a potential conflict existed, but that counsel opined it did not present a problem. (Doc. 791, affidavit of Melody Rose dated October 11, 2001, submitted as an exhibit to her Motion for Bond Pending Appeal). She further stated that she did not waive her right to have independent and conflict free counsel prior to or during the course of the trial. Defense counsel states in his affidavit, submitted in support of the instant motion, that the defendant was advised of a potential conflict with co-defendant David Johnson when she hired counsel's firm, but that she explained she did not feel a conflict existed, and waived any potential conflict that might arise, although the purported waiver was not in writing. (Doc. 1350, exh. 2).

On the first day of trial, Ron Johnson, counsel for the defendant, brought the issue of a potential conflict to the court's attention. The following discussion took place:

> **MR. JOHNSON: Your Honor, I represent Ms. Rose. Roy Kinsey represents David Johnson. One of Ms. Rose's witnesses is a law partner to Mr. Johnson, Marty Grusin. We know of no real conflict in that, but I talked to the Government way back and they thought it might**

---

[4]*United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975).

[5]Federal Rule of Criminal Procedure 44©) provides as follows:
Inquiry Into Joint Representation.
(1) Joint Representation. Joint representation occurs when:
    (A) two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and
    (B) the defendants are represented by the same counsel, or counsel who are associated in law practice.
(2) Court's Responsibilities in Cases of Joint Representation. The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

be better if we did have a *Garcia* hearing to have them recognize the potential conflict and to waive that. I don't know if that's still a concern of them or not.

MS. HELDMYER: I would certainly prefer to have a *Garcia* hearing on the record.

THE COURT: Aimed toward what?  Maybe I'm not fully comprehending what.

MR. JOHNSON: Mr. Johnson's law partner advised Ms. Rose on some of the circumstances surrounding this, some contracts. He had no involvement really in the charges involving Mr. Johnson, but just since they're in the same law firm and a potential spillover affect, just in an abundance of caution we thought it might be better if they waived the potential conflict.

THE COURT: Well, I guess I'm having a little trouble determining how there would be a conflict.  Mr. Kinsey, how do you see it?

MR. KINSEY: Judge, I don't see the conflict being there.  I can understand Mr. Johnson's, Mr. Ron Johnson's concerns, but I personally do not see a legal conflict.

THE COURT: When would that person be testifying?

MR. JOHNSON: I don't think the Government has him subpoenaed.  It's a potential defense witness.

THE COURT: Can we just leave that open for one of our hopeful days when we consider one of those matters.

(Doc. 561, at 5-6).  No hearing was ever held.

The defendant claimed on appeal that her trial counsel labored under an actual conflict of interest.   In support of her claim of actual conflict she referenced her affidavit in support of her motion for release on bond in which she claimed that her good faith reliance on advice of counsel defense was compromised because

counsel did not call an attorney as a defense witness because of his concern about how the testimony of a lawyer-witness would affect the defense of the lawyer-defendant who was the firm's other client. In its opinion, the Eleventh Circuit noted that a technical violation of Rule 44(c) does not require automatic reversal. (Doc. 1186 at 17-18, citing *United States v. Romero*, 780 F.2d 981, 985 (11th Cir. 1986)). It also found that because no actual conflict was intimated to the district court, the record did not trigger a *Garcia* hearing. (Doc. 1186 at 19, citing *United States v. DeSimone,* 660 F.2d 532, 541 n.9 (5th Cir. Unit B 1981)). Finally, it stated that even if the district court had erred under Rule 44©) and *Garcia* by not conducting an appropriate hearing, this "will not mandate reversal absent an actual conflict of interest." (Doc. 1186 at 21-22, citing *United States v. Mers,* 701 F.2d 1321, 1326 (11th Cir. 1983)). The court denied relief because the record was not adequately developed with respect to counsel's potential conflict of interest due to remaining questions of fact as to the effect of Martin Grusin's testimony, counsel's reasons for not calling him, and whether, if there was a conflict, the defendant was properly advised of her right to conflict-free counsel. (Doc. 1186 at 20-21).

The United States Supreme Court has held that in order to demonstrate a Sixth Amendment violation based on an attorney's alleged conflict of interest, a defendant must establish both an actual, rather than a speculative, conflict of interest and an adverse effect on the lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *see also Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); *Quince v. Crosby*, 360 F.3d 1259, 1264 (11th Cir. 2004); *Burden v. Zant,* 24 F.3d 1298, 1304 (11th Cir. 1994); *United States v. Novaton,* 271 F.3d 968, 1010-1011 (11th Cir. 2001), *cert. denied,* 122 S.Ct. 2345 (2002). "To succeed on an ineffective-assistance claim based on a conflict of interests, an appellant must show specific instances in the record that 'demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *Caderno v. United States*, 256 F.3d 1213, 1218 (11th Cir. 2001) (quoting *Cuyler v. Sullivan*, 446

U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)). In order to prove an adverse effect, defendant must show (1) a plausible alternative defense strategy that counsel might have pursued; (2) that the alternative strategy was reasonable; and (3) some link between the actual conflict and the decision to forego that strategy. *Brownlee v. Haley*, 306 F.3d 1043, 1064 n.7 (11th Cir. 2002). Once the defendant has established both actual conflict and adverse impact, she need not show prejudice to procure reversal of her conviction, because in the case of actual conflict, prejudice may be presumed.[6] *Burden,* 24 F.3d at 1304-05 *(citing Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987); *Porter v. Singletary*, 14 F.3d 554, 560 (11th Cir. 1994), *Danner v. United States*, 820 F.2d 1166, 1169 (11th Cir. 1987)).

Defendant claims that when she was first approached by David Gilliland to work for him, she consulted Marty Grusin, the attorney for her employer United American Bank, for his assessment of Gilliland and the offer, as well as advice as to whether she should associate with Gilliland. She does not specifically say what advice she received, but obviously she chose to proceed. The defendant later retained another attorney, Jack McCahill, for advice on issues concerning her obligations with respect to a receivership, and Mr. McCahill advised her that pursuant to her agreement with the investors, she had to distribute funds to them despite Quilling's desire to collect all the funs for pro rata distribution to all investors. McCahill was called as a witness at trial, but defendant contends that Grusin's testimony was critical to the issue of whether she was acting in good faith and on advice of counsel when she first joined him.

Defendant next contends that good faith reliance on advice of counsel was a viable defense. In fact that was the defense she presented, and appropriate instructions were given to the jury.

---

[6]The difference between "adverse impact" and prejudice is not explained in *Burden.*

**Defendant's argument fails with respect to the link between the actual conflict and the decision to forgo the alternative defense. She states that "rather out of fear of creating a problem for Grusin's law partner and Rose's co-defendant, David Johnson, Rose's trial counsel in consultation with his law partner and trial counsel for the co-defendant, Roy Kinsey, opted not to call Grusin." (Doc. 1298 at 19). In the affidavit she submitted as an exhibit to her Motion for Bond Pending Appeal she stated:**

> **... Ron Johnson decided against calling one attorney as a defense witness because, in his opinion, it would create problems for David Johnson, the other client of the law firm . . . In retrospect, I believe the decision not to call martin Grusin or Hugh Odom was impacted by counsel's concern over how the testimony of a lawyer-witness would affect the defense of David Johnson, a lawyer-defendant, who was the firm's other client. The details of my reliance on counsel was compromised by my attorney because of his concerns outside of my best interest.**

**(Doc. 791, affidavit of Melody Rose dated October 11, 2001, submitted as an exhibit to her Motion for Bond Pending Appeal).**

**Despite defendant's professed "belief," she offers no reason why her interests and those of co-defendant Johnson were inconsistent, and no suggestion as to why Grusin's testimony could have harmed Johnson in any way. Furthermore, the government notes that the attorney she consulted was an unindicted co-conspirator, so the likelihood of his testifying was very slim. Trial counsel states in his affidavit that he interviewed both Martin Grusin and another attorney, Hugh Odom, as potential witnesses for the defense, but that he and the defendant both believed it was in her best interest not to call them. (Doc. 1350, exh. 2). Counsel also notes that the substance of Mr. Grusin's testimony was developed from other witnesses throughout the trial. Finally, with respect to Grusin's potential testimony as proffered by the defendant, the government addresses each area of testimony in turn, asserting that it was irrelevant, inadmissible, repetitive of other testimony or**

damaging to the defendant. The government's evaluation of this testimony remains unrebutted.

Because defendant has failed to show that there was any link between the decision to not call Mr. Grusin as a witness in her behalf and the "conflict" of dual representation, that is that an actual conflict adversely affected counsel's representation of her, she has not shown that she is entitled to relief.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 1298) be DENIED.

And it is ORDERED:

In light of the fact that no reply brief was filed and the status of counsel's representation is unclear, the clerk is directed to send a copy of this recommendation to both the defendant and her counsel of record.

At Pensacola, Florida, this 12th day of December, 2005.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:00cr48/LAC; 3:05cv256/LAC/MD*